25-1803 USA v. Edys Renan Membreno Diaz Argument not to exceed 15 minutes per side. Ms. Bean, you may proceed. Thank you. Good morning, and may it please the court, Megan Bean for the United States. I'd like to reserve five minutes of my time for rebuttal. Sure. Sentencing discretion has limits. In here, the district court abused its discretion when it varied down by 100 percent from Membreno's statutory maximum 24-month guideline range and sentenced him to no prison time after he entered the United States illegally for the seventh time and raped and sodomized a woman with cerebral palsy while he was in the country illegally. The substantial... Counsel, can I ask you, that's the issue I understand you raising on appeal. I don't understand you to be challenging the concurrent nature of the sentence on appeal. Is that right? That's right, your honor, because that really has no bearing because it couldn't be concurrent going forward when he received a time served sentence, so that's correct. The substantially below guideline sentence does not enjoy a presumption of reasonableness and indeed was substantively unreasonable because on the egregious facts of this case, the sentence imposed does not, excuse me, conform to the sentencing goal set forth in section 3553A. In reviewing for substantive reasonableness, this court must consider the extent of the deviation from the guidelines and ensure that the justification provided is sufficiently compelling to support the degree of the variance. Here... Counsel, if I am remembering correctly, the pre-sentence report recommended a sentence of 24 months, the statutory max, to run concurrently with the state sentence. How would your argument be different if that were the sentence that the district court had imposed? Your honor, I'm not sure that it recommended a sentence of 24 months. I think it noted that under 5G 1.3d the court had discretion to run a concurrent or consecutive to the state sentence, but just, I mean, here we have the district court clearly intended to run a concurrent sentence. So, say the district court imposed a max 24 month sentence that was to run concurrently to the state sentence. How would your argument, how would that affect your argument? Well, I think there are some things that would be different had the court imposed a statutory maximum sentence, one that would not have resulted in a sentencing disparity in the way that the time served sentence here did. The guidelines here, his guideline range was 24 to 30 months, capped at the stat max of 24 months. And sentencing commission data shows that similarly situated offenders received on average a 19 month sentence. But we don't know if those sentences that are the 19 months were run concurrently or consecutively. So, I'm just curious, are we, you would still be arguing that the sentence was substantively unreasonable if the district court gave a 24 month concurrent sentence? Your honor, I mean, the government requested a 24 month consecutive sentence and its position where the court to vacate would be the same. But I think the issue here is not what the district court might have done, but what it did do. And here it imposed a time served sentence when Membranio had actually served no time in federal custody. And we're not going to send it back unless an error is is harmful, right? Unless it has to change the overall max time that an individual serves in custody, right? So, I'm trying to figure out if a consecutive sentence is required here. Because otherwise, 24 month sentence run concurrently is you know, would expire still while the defendant is in is in state custody serving his state sentence. Well, a consecutive sentence is not required, but it's the government's position that it is warranted on these facts. And a 24 month sentence for the district court to impose that would provide, would be better at providing deterrence, both specific and general, than the non-custodial sentence that the district court actually imposed. Start with specific deterrence. Membranio said that he continually came to the United States, indeed he did so about seven times in less than two and a half years, often at different entry points, clearly just trying to get in time after time, because to quote his sentencing memo, each time there was no criminal consequence. All of this time served sentence has again shown Membranio is that other than the $100 special assessment that he paid, there is no federal consequence for repeatedly violating immigration laws and committing what is arguably one of the most heinous crimes against a vulnerable victim when he was again here illegally. Moreover, as for general deterrence, the time served sentence did not afford that either. In fact, the district court improperly threw up its hands stating that it generally has almost no hope that prosecuting someone for unlawfully entering the country illegally will deter others from coming. But this court has said that a district court's belief that general deterrence is futile does not obviate the need to consider it. And here the court made a second mistake with respect to general deterrence. It left general deterrence to Membranio himself. It said that based on his statements, it believed after imposing no prison time, he could return to Honduras, tell others of his experience, and therefore deter them from coming to the United States illegally. But the law on that is clear. This court has said several times, including in the Robinson case and the Musgrave case, that it must be the sentence imposed that affords adequate deterrence. And the only thing that Membranio returning to Honduras will tell others is that, again, there is no consequence for repeatedly coming illegally and committing a heinous crime while in the United States. The district court made another mistake when it discounted the serious nature of the offense and Membranio's troubling history and characteristics. This court has said speaking in broad terms about the seriousness of the offense is insufficient unless the sentence imposed actually reflects it. To the extent the court acknowledged the seriousness of the offense at all, the non-custodial sentence does not match up with its statements. And we're talking about the seriousness of which offense? The unlawful re-entry offense, your honor. So is it that no district court judge can give time served for an unlawful re-entry offense because it's a serious offense? No, your honor. That's not what the government is arguing. It's that in this case, given the recidivist, the seven-time recidivist nature of this unlawful re-entry offense and the fact that Membranio committed, again, a very heinous crime while in the That requires something more than a non-custodial sentence in order to avoid unwarranted disparities. And indeed this court has affirmed above guideline sentences in several cases where an individual has unlawfully entered the United States previously and especially where those unlawful entries have not factored into the defendant's range. Now here it's notable that Membranio was already, his guideline range was already capped at the statutory maximum 24 months, but not one of his prior unlawful entries factored into that range. And so for example, in the Ruiz case, this court affirmed an upward variance to 18 months on a 6 to 12 month guideline range holding that prior unprosecuted illegal entries provided more than enough justification for an upward variance, particularly in that a variance was expressly encouraged when guidelines do not account for past criminal conduct. Here really the only consideration of the recidivist nature of this offense was this court commending Membranio for repeatedly coming to the United States illegally in work. But that recidivist... I keep coming back to the concept of the statutory maximum and its relationship to what the sentence was here in terms of whether it's harmless error. Isn't it accurate that it's a harmless error either at the 24 months or the five months here because any of those would be served before he was eligible for any release for his criminal prosecution? So help me understand why harmless error doesn't have a role in review of the reasonableness of substantive reasonableness of a sentence. Brenner, a couple of points in response. First, I want to clarify this wasn't a five-month sentence. All of the time Brenner spent in custody pre-trial was credited to his state sentence. So this was a non-custodial sentence. But it was distinct. It was distinct from where he was, right? Had he been in the state prison, there would have been a number of programs and other assistance available to him. But in the federal system, they were not. So it was served in a federal facility, correct? It was served in a federal facility. That's correct. But that is not the same as serving a five months of federal time. The second point, Ronna, is that the error here isn't harmless. Again, the sentence imposed has to afford deterrence both to Membrano and others. And so there is a difference between a time-served sentence, meaning no prison time, and what that means for deterrence and a 24-month sentence. Even if at the end it does not impact any time that he is held in a prison? Yes. Yes. And that's because, again, part of the district court's role in sentencing is to look at how others will view this and what it will say to them if they are thinking of coming to the United States illegally. And a sentence of no prison time instead of a 24-month sentence matters, and it makes a difference. And so while it may not make a difference to the number of days that Membrano serves in custody, it will make a difference for matters of deterrence, again, avoiding unwarranted sentencing disparities, and indeed for district courts in the future who are looking how to sentence offenders that have less serious records or who fall into the mine run. How could a court determine that it's appropriate to sentence in a mine run case within the guidelines if the court were to affirm the non-custodial sentence in this case? Copy that. Does anyone else have any other questions from the panel? Okay, I think you still have your five minutes rebuttal, so we'll now let Mr. Renteria use his 15 minutes. Good morning. May it please the court, Fabian Renteria, Federal Committee Defender Office for the Eastern District of Michigan, on behalf of a plea, Mr. Membrano. This court should affirm the judgment imposed by the sentencing court, the district court, and find that it did not abuse its discretion in sentencing Mr. Membrano to its sentence for unlawful reentry under 8 U.S.C. 1326A, meaning that he was not eligible for any enhanced penalties under B-1 or B-2. Mr. Renteria, can I ask you a clarifying question as well? You just made the point you're arguing that the district court didn't abuse its discretion in entering the sentence. I don't think you argued anywhere in your brief that if the district court did error, that error was harmless, correct? I did not argue that in my brief. However, to follow a little bit of the discussion that has already been presented— Those words, the words harmless error are nowhere in your brief, correct? They are nowhere in my brief, and I do, they're not in my brief, but I do believe that in following along the conversation that's been happening, the functional equivalent, whether it would have been a five-month sentence, an 18-month sentence as we were arguing for in terms of a sentencing memorandum, and in court, and I even said if this court gives an 18-month or 24-month that it'd be concurrent, would have no functional difference because it would still be concurrent with this current sentence that Mr. Membrano is currently serving. A sentence that will not fully discharge until 11 years from now. A sentence that he could be detained until 2037. A sentence that in of itself is for the offense conduct that he was convicted in the state. One of the few things that I think comes into play on that matter is that that sentence in of itself also assists in providing deterrence overall for criminal activity. How is that? How does a zero-month, $100 fine sentence deter either this defendant or the potential defendants at large? Well, Mr. Membrano is not just a $100 fine. It's a federal felony conviction. That's one. It's two, yes. We don't look at the conviction. We don't look at the fact of the conviction for deterrence purposes. Our Bistline case says pretty clearly that the conviction itself is not the inquiry regarding deterrence. It's the sentence. Well, for Mr. Membrano, he is looking at the specific conviction. And secondly for him, and I know that I understand what your honor has said, but for him also it's, and what the court understood in its own review of the factors in this case and in analyzing them is that he will still serve a lengthy sentence for offense conduct in the underlying state case. So district courts are allowed to consider if someone is serving a state sentence or another sentence, another jurisdiction in fashioning a sentence and considering potential issues of deterrence or disparity or anything else that comes into play. What I will also add is that I know that the government pointed out United States v. Robinson regarding someone who received a one day time served sentence. For that individual, the guidelines at the bottom were 78 months, 7,100 images of child pornography. And the reason this court did not find that sentence reasonable is because the sentence was not tied to the issue of protecting the public or to really allow the district court there to explain how a one day time served sentence would protect the public. The difference there between Robinson and here is that the district court had it baked in in many ways, both the offense calculation, because that's why office level of eight when increased by 10 levels to criminal history points also came from the threshold. Just to make sure we're understanding, is your argument that your client received a five month time served sentence or a zero month sentence? My understanding is that he received a time served sentence and that that sentence is up to the BOP to decide how it effectuates that sentence. He was under state custody. He was in the federal jail, a federal jail during the five months. And so I know that in the briefing back and forth we've gone about whether it's primary jurisdiction, secondary jurisdiction at the end of the day. So I just look at the statute. I think we all agree that 3550 or 3585 says that this time could not count against a federal sentence because because we all agree it counts against the state sentence. So how could how can this be? How can this five month period be considered part of the actual sentence that your client received? In other words, I could see the district court saying, as part of my calculus and saying the sentence, I'm going to consider a number of things, including that the defendant served five months in this kind of joint custody, whatever we want to call it. That time is credit to the state, but I'm going to consider that. And so I'm going to enter a zero month sentence. I think the district court could do that, but I don't think there's a legal ability for the district court to enter a five month time served sentence in light of 3585, 3585. And that was an issue that if the government appellant knew was going to be an issue, should have raised it and allowed the district court at that point to be able to address it. And it did not raise it at that point. Is it your position then that that just only goes to procedural reasonableness and not to substantive reasonableness? So my position is that it was a it should have gone to procedural reasonableness just on that specific argument. But even if this court decides it's not a argument or standard to be looked at, that even then under the abuse of discretion standard, the judge, the district court sentence did not abuse the discretion in handing down a sentence of time served in this case. So your argument, you're saying wouldn't really change if it were, if we were to consider it a kind of a zero noncustodial sentence versus a five month sentence. That's correct, your honor. Can I ask you too? I mean, I hadn't, I haven't seen a lot of pieces from our court where we analyze the implications of a deportation upon release. How does that impact if at all the kind of the 3553 like analysis that we require our district courts to do? So for many district courts, they take that into consideration on whether, for example, to impose a term of supervised release or not, and whether also to determine whether the public will be protected and if there's adequate deterrence. And so it comes into play in this nature or in this case too, because in this case, one of the things that we typically see in other cases, they typically, the government typically ask for a term of supervised release, be it just one year. In this case, the government itself did not even ask for a term of supervised release because it did not believe that it was needed. But the way it comes into play here is that the district court also knew that there was an ICE detainer, this person would get removed, that confirmed it in court by asking the government counsel at the end to ensure, and took that consideration that the public will be protected once Mr. Manbangan finishes whatever sentence he's finishing, because he will be in fact removed from the country. And that will also help with deterrence in some ways. So that is in some ways district courts take that into consideration with fashioning the sentence that they believe is appropriate for that specific individual. And that is what the court did in this case. Now, I think there was some initial, I think, back and forth about it, about the length of time that he'll be there. But one of the things I add is that for someone that's serving, for example, a sentence with the Michigan Department of Corrections, MDOC, I know that the earliest release date for him is 2028. That does not mean he will be released in 2028, because now the parole board will have before it one additional felony conviction to look at. We'll have a federal detainer. That's all possible. It's also possible that, you know, a defendant in this case or a different case could be, the sentence could be commuted, the state could change its sentencing laws, the state could decide that their prisons are overcrowded and release a number of people from prison. So it seems the legal point I guess you're advocating for is that federal courts have to turn over sentencing matters to state courts. So anytime that a federal sentence is equal or less than the state sentence, it's never error. There's never going to be, it's never going to be a, it'll always be harmless error if the district court's made an error. So long as the sentence will be less than the state sentence, because the federal government essentially, I guess, trusts a different sovereign to enforce the criminal law, which that just is an odd principle to me to begin with, odd principle of sovereignty. And second, it then turns on the vagaries of state law, which there's reasons why that sentence could actually be shorter in this case or other cases than what the district court believes it to be at the time of sentencing. I disagree, Your Honor, respectfully with that. I would say that there is no application of sentence. No, sorry, go ahead. The district court didn't abdicate its role in determining and taking into consideration all the factors and information presented by the parties extensively and the probation officer. It did not abdicate its role in providing the sentence that it believed based on its analysis of this offense, which is unlawful reentry, the criminal history, and also the realities of- Those are the reasons why it didn't error, I think, is what you're saying. And I was just saying if it did error, I just don't see why harmless error could apply here in light of the state sentence. But can I just take you to my just overall impression of the case? Substantive reasonableness, we'll probably all agree, is very deferential to district courts. And there are very, very few times, I can think of one case, but there are very, very few times where I have found that I've agreed with a panel that a sentence was substantially unreasonable. But the two kinds of cases, one where I joined, were two cases. They both involved child pornography. I'm not sure that matters so much to distinguish it. But they're both cases where the defendant should have served years in prison and the Sixth Circuit said that is substantively unreasonable. And in both those cases, there were hints that the district court judge just sort of disagreed with federal policy regarding child pornography, which is a fair debate to have, but Congress should have the final word on that. I feel a lot of echoes of those cases here. We have a defendant who should have served or could have served a couple of years of a federal sentence, but the district court, both in this case and other cases, has given a lot of hints that the district court essentially disagrees with federal immigration policy and has almost, in a way, sort of nullified federal immigration policy in the way that the district court judge in the other case essentially nullified the child pornography laws by giving such a low sentence. So that's what concerns me. It feels a lot like those other two cases because I think the sentence here is zero days plus a $100 fine. So why is that wrong? It's incorrect, Your Honor, because the district court here did not make any or announce any policy disagreements with immigration policy or immigration law. Well, it said they rewarded the defendant for coming to the country multiple times in violation of federal law because he was trying to help his family, which I will agree is noble, but that's in violation of federal law. And he did it seven times. But she seemed to view that as a positive, not a negative. Well, I would say that when she was talking about the times that he had come, he had come to also address the realities that he was coming here to work in the United States and to help his family. And yes, I understand that it probably could be for some people because they're a noble purpose, but one of the people it's just there, it just violates, it violates our immigration laws. It violates your civil immigration law. And Congress could have had a proviso that said you can't come to the country unless you, or there are some ways you can get permission to work, but that didn't happen here. And the particular thing in this case, which makes it different just from a general perspective is that in this case, one of the points is he had prior removals, but those were one was expedited. One was expedited, five were Title 42 removals, which is same day removals. There were no criminal consequences. There was no time to really even talk to an attorney and figure out what is happening. I'm not before a judge. I know I'm just being processed by an immigration officer at the border and it's done. This is radically different now. This has been someone that has been, a complaint was filed two years after his sentence in state court. He was brought to federal court. He understood why he was being prosecuted. He waived an indictment, agreed to present information. There was a pre-sentence report. Information was gathered, sentencing occurred. So this court in itself is not just saying I completely disagree. And because of that, I'm going to give everyone the same sentence. In this case, this court had plenty of information. And I would venture to say more than other typical unlawful reentry cases about the person, both on their history and characteristics and that they were working in the United States, paying paid about a thousand dollars a week. What's the single best mitigating factor that you thought was in the record that that helped your client? Because I saw a lot of bad, I thought meant multiple reentries in terms of history and characteristics, a rape of a disabled person. So there's a lot of bad markers. There's a lot of mitigating factors that I believe are critical or important in this case. And I don't believe that even when we rebalance them is appropriate thing for this appellate court to do. I mean, we give district really wide discretion about their decision making and how they balance. I totally agree. I just asked you what the best factors you thought. Sorry. No, I thought it was the best. For example, I know he was a very low income person. That's true for a lot of people who come here in violation of federal law. So what I would say is that for him, I would say the most mitigating factor is that while he was in the United States before July 17, on this arrest, he had been working consistently and sending and helping his mother and helping his family in Honduras, working consistently and making those earnings to help pay for the poverty, his family lived there and to also help survive in this country is one of the main factors that I believe is making on his side. And that during that period of time when he was in the United States, there were no other criminal violations, no arrest, for example, for DUIs, drugs, fraud or anything else. I mean, I might I might come out in a little a little more cynically counsel, but, you know, one of the things that I saw the district court kind of talk about here is that she doesn't think this person will come back, right? That this person she's like making sure that this person will get deported and she doesn't think that this person will come back. And what do we do with with that finding? Now, I have to say, like, there may be lots of reasons to disagree with that. My my colleagues have talked about and your friend on the other side have talked about how many, you know, reentries that were not charged, you know, happened. Maybe maybe, quite frankly, some of the poverty and things like that could could cut against that finding that he'll he'll want to come back and support his family again. But the district court judge made this finding, I think, largely based on the fact that if he were to to re reenter again and be convicted, he he'd face, you know, a 20 year, you know, max and a much, much higher guidelines range. What what do we do with with that, which seems a little bit counter to the to the mitigation that you're talking about? So with that information, I think is looking a little bit prospectively in the future, the now and the future for him. And so that is correct. If he were to return and be arrested for unlawful reentry, he would be looking at 20 year max stat max. He'd be looking at guidelines approximately of 63 months at the bottom. He'd be looking at much more severe penalties. But more importantly, I I what I will say is that the experience and of itself, sometimes we take defendants at their own word that they won't return. Sometimes we take defendants at their word that they understand this process. And this court, this district court who had the opportunity to see that person twice to hear that information independently made that assessment for her to say that he that in her view, this might be one of the few that she believes the sentences that she is providing or handing down will actually ensure deterrence and that he not come back. Okay. Any other questions from the panel? Great. Okay. Well, then, Ms Bean, you have your rebuttal time. Thank you, Your Honor. I want to start just where Mr Venturia left off, and that is, you know, the fact of the defendant said he will not come back has to be weighed against the fact that in less than two and a half years, he tried to come back and did come back seven times. But that's clear error. I really appreciate you starting there because it's something that I'm trying to figure out. So the district court judge, you know, initially, she, you know, the district court reviews the whole record, knows about all these reentries and hears from the defendant himself and also can see how the guidelines are calculated and what illegal reentry would be if he were to come back. She confirms he's going to get deported, and she makes, would you say this is a fact-finding that has to be reviewed for clear error? I mean, what do we do with the district court's analysis on this point? Do we just say, well, we think her fact-finding about reentry and his likelihood of reentry is clearly erroneous? Well, I think here it was clearly erroneous, Your Honor, because looking at his history, again, every time he came illegally, he faced up to two years in federal prison. And he has said, and Mr. Rondria said again today, the fact that he had suffered, quote, no criminal consequences for those reentries made him think that repeatedly coming into the United States was okay. He was not deterred from it. So it is hard to understand how a non-custodial sentence, again, for the seventh time would deter either Mr. Rondria or other people who were thinking of coming illegally, because all it shows is that, again, there is no federal consequence. So I think you have to look at the district court's justification balance against the facts of the case, which show a person that was undeterred when there was the prospect of consequences every time they decided to come illegally. And I wanted to return briefly to the harmless error. Can I just ask about the deterrence point? Because I understand, again, deterrence to have to come from the sentence, not the conviction. And the fact that he would face greater consequences if he comes back is tied to the conviction. I think that then creates the legal status wherever it happens again. So nothing about that penalty has anything, is something we can consider vis-a-vis deterrence, because it all arises from the conviction, not the sentence. So the sentence is for deterrence consideration. I'm not sure. I think it's closer to maybe a legal question. But it's really difficult to see how that can be even considered as part of the deterrent analysis. I think that's right, Your Honor. And again, the court has specifically said as much. In the Robinson case, the district court found in a child pornography case that the fact of a conviction and others learning about it from a press release was insufficient because it has to be the sentence imposed that affords deterrence, not the conviction itself. And so essentially, if we're crediting Mimbrano, spreading the word and all of that, that is insufficient. It has to be the sentence that affords deterrence. And I wanted to come back to the harmless error point, Your Honors. I had argued previously that this was not harmless because of what it means for deterrence in the case. The length of the sentence that he received now would impact future sentences that he might receive, his guideline range, etc. The second point is one that Judge Breedler did make. Can you just spell that one out for me? If he gets a guideline sentence here or the max sentence here, where does that calculate into the guidelines, his range, if he were to come in again and be charged with illegal reentry and plead like here? I think when we have recidivists and they have been sentenced for a crime and then committed again, often a district court looks back at what they have received previously when determining what to sentence someone to. Not in the calculation, but just in the 3553A analysis. Well, I suppose, again, deterrent. So if someone had been sentenced to a 24-month sentence and wasn't deterred, a court might look to what sentence would actually deter them. I'm agreeing that it would be in the 3553A analysis. I just was confused if it somehow went into the guidelines calculation itself. And the second point Judge Breedler made, which is that we cannot leave the punishment for the violation of federal laws to state courts. So we don't know if Mr. Membraneo were to file a habeas petition or what might happen to his state sentence. So here, the noncustodial sentence imposed, the government submits was an abuse of discretion and for that reason should be vacated and remanded for resentencing. Thank you. Any other questions? Great. Okay. Well, thanks to both of you for your very good arguments. The case will be submitted.